IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ANDRE VAN,

    Petitioner,

v.                                                    Civil Action No. 2:15cv78
                                                      (Judge Bailey)

CHARLES WILLIAMS, Warden, FCI Gilmer,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On October 23, 2015, the *pro se* Petitioner, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, seeking an order requiring the Federal Bureau of Prisons ("BOP") to award him prior custody credit for time he spent in state custody. Along with his petition, Petitioner filed a motion to proceed *in forma pauperis* ("IFP") and a copy of his Prisoner Trust Account Report ("PTAR"). Because Petitioner's PTAR did not include the requisite copy of the Ledger Sheets to the account, the Clerk of Court issued a Notice of Deficiency. On October 26, 2015, Petitioner paid the $5.00 filing fee. On October 27, 2015, the undersigned ordered the Respondent to show cause why the writ should not be granted. On November 3, 2015, Respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. On November 11, 2015, a Roseboro Notice was issued, advising Petitioner of his right to respond to the Respondent's dispositive motion. On November 5, 2015, Petitioner filed a copy of his PTAR with attached Ledger Sheets, and on November 30, 2015, he filed a Response in Opposition to the

Respondent's dispositive motion. This matter is pending before the undersigned for a Report and Recommendation.

## II. Facts

### A. Conviction and Sentence[1]

On October 25, 2005, in Detroit, Michigan, Petitioner was arrested by Detroit police officers after the discovery of weapons during a traffic stop.[2] At the time of his arrest, Petitioner was classified as a parole absconder.[3] He was initially lodged in the Wayne County Jail; subsequently and shortly afterwards, at a time not apparent from the record, he transferred out of Michigan Department of Corrections' ("DOC") custody.[4]

On November 7, 2005, six federal drug and gun charges were sworn against Petitioner by one Gregory A. Lotoczky, Special Agent, Alcohol, Tobacco and Firearms ("ATF") in a federal Criminal Complaint before United States Magistrate Judge Mona K. Majzoub in the Eastern District of Michigan.[5] Petitioner made his initial appearance in federal court on the charges on November 14, 2005.[6] After several motions and hearings in the case were argued and ruled upon, on July 26, 2006, Petitioner's federal defense counsel filed a Motion to Dismiss and/or Release from Custody, based on a Speedy Trial Violation. A hearing was held in United States

---

[1] Information regarding Petitioner's underlying criminal cases can be found on PACER at E.D. Michigan Criminal Case No. 5:05cr90038 and 5:06cr20491.

[2] See Declaration of Sharon Wahl, Paralegal at Beckley Consolidated Legal Center, Dkt.# 10-2, ¶6 at 1.

[3] See Michigan DOC Offender Movement Report, Dkt.# 10-3 at 2.

[4] Id. The Michigan DOC Offender Movement Report does not specifically indicate it, but a review of Petitioner's federal docket in Criminal Case No. 5:05cr90038 indicates that he was in federal custody at least by November 14, 2005.

[5] See E.D. Michigan Criminal Case No. 5:05cr90038, Dkt.# 1.

[6] See Id., Order of Temporary Detention, Dkt.# 3.

2

District Court for the Eastern District of Michigan on August 24, 2006. By Order entered August 28, 2006, the motion was granted and Petitioner was released from custody.[7]

On September 1, 2006, Petitioner was returned to the custody of the Michigan Department of Corrections, and his status was changed to a Parole Technical Rule Violator.[8]

On September 15, 2006, Petitioner was indicted by a federal grand jury in the United States District Court for the Eastern District of Michigan in Criminal Case No. 5:06cr20491 on six counts of drug and weapons charges.[9] Petitioner was again borrowed by federal authorities on October 19, 2006 to appear in federal court, via a writ of *habeas corpus ad prosequendum*.[10] After a 3-day trial, Petitioner was found guilty on all counts on December 21, 2006.[11] He was returned to the state via return writ on January 29, 2007.[12]

Petitioner was borrowed again by federal authorities on October 24, 2007.[13] However, his sentencing was continued, and so Petitioner remained housed with the federal authorities on the writ.[14] After a sentencing hearing that began on December 20, 2007, adjourned, and was resumed on February 20, 2008, Petitioner was sentenced on the federal charges to total term of 360 months imprisonment.[15] The judgment was silent as to the concurrent or consecutive nature of

---

[7] See Id., Dkt.# 39.

[8] Id.

[9] See Indictment, Dkt.# 10-3 at 4.

[10] See Petition for Writ of Habeas Corpus *Ad Prosequendum* and Order, Dkt.# 10-3 at 9 and 11.

[11] E.D. Michigan, Criminal Case No. 5:06cr20491, Dkt.# 13.

[12] See Michigan DOC Offender Movement Report, Dkt.# 10-3 at 2.

[13] See Michigan DOC Offender Movement Report, Dkt.# 10-3 at 2 and Petition for Writ and Order for November 13, 2007, Dkt.# 10-3 at 19.

[14] See Michigan DOC Offender Movement Report, Dkt.# 10-3 at 2.

[15] See Judgment in a Criminal Case, Dkt.# 10-3 at 23.

Petitioner's federal sentence with his state sentence.[16] Likewise, there was no mention of the state sentence being consecutive or concurrent to the pending federal sentence in either of Petitioner's federal sentencing hearings.[17]

Petitioner was returned to the state via return writ on May 22, 2008;[18] he remained in state custody serving his parole violation term until he was paroled by the state on February 10, 2009.[19] He finally discharged his Michigan State parole on February 10, 2011.[20]

Petitioner's federal sentence commenced on the date it was imposed, specifically February 20, 2008, based on a *nunc pro tunc* designation that the BOP granted on September 21, 2015, after Petitioner exhausted his federal administrative grievance process over the issue.[21] Petitioner had already received credit towards his state sentence for all the time spent in custody before February 20, 2008.[22] As a result, Petitioner did not receive prior custody credit for this time toward his federal sentence.[23]

Petitioner's projected release date, the date on which he will complete serving his federal sentence with consideration for good conduct time, is April 10, 2034.[24]

---

[16] Id.

[17] E.D. Michigan Criminal Case No. 5:06cr20491, Dkt.# 31 and 40.

[18] See Michigan DOC Offender Movement Report, Dkt.# 10-3 at 2.

[19] Id.

[20] See Michigan DOC Computation Letter, Dkt.# 10-3 at 36.

[21] See BOP Sentence Computation Data for Andre Van, Dkt.# 10-3 at 31 and *Nunc Pro Tunc* Approval, Dkt.# 10-3 at 34.

[22] See Michigan DOC Computation Letter, Dkt.# 10-3 at 36.

[23] See BOP Sentence Computation Data for Andre Van, Dkt.# 10-3 at 31.

[24] Id. at 30.

It is undisputed by the parties that Petitioner properly exhausted his administrative remedies prior to filing this petition.

## B. Federal Habeas

### 1) The Petition

Petitioner contends that even after he successfully challenged the BOP's sentence computation through the administrative remedy process, finally obtaining a *nunc pro tunc* decision that his federal sentence should run concurrent with his state sentence, the BOP still miscomputed his time and did not include all of the prior custody credit time to which he believes he is entitled.

As relief, he seeks a recalculation of his sentence to include all time from November 7, 2005 to the date of the February 20, 2008 *nunc pro tunc* re-computation.[25]

### 2) Warden's Response

The Respondent argues that the petition should be dismissed or summary judgment granted in its favor because:

1) Petitioner's federal sentence began on February 20, 2008; and

2) Petitioner is not entitled to any further prior custody credit because he has already received credit for all of the time he spent in custody prior to the commencement of his federal sentence, because that time was credited against his state sentence.

### 3) Petitioner's Response to Warden's Dispositive Motion

Petitioner reiterates the arguments previously made in his petition and attempts to refute the Warden's on the same, arguing that he has only received a "partially concurrent" sentence from the BOP.

## III. Standard of Review

---

[25] Dkt.# 1 at 5 and 8.

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff s well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin. 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765

(4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th

Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. Analysis

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility in which the sentence is to be served." 18 U.S.C. § 3585(a). However, in some cases, a federal sentence may begin prior to the Attorney General gaining physical custody of the defendant. Where, as here, when a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him,...and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty . . .

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting In re Liberatore, 574 F.2d 78 (2nd Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *aff'd,* 100 F.3d 946 (3rd

Cir. 1996) *citing* United States v. Warren, 610 F.2d 680, 684-85- (9th Cir. 1 980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."). The mere fact that a state prisoner is in federal court pursuant to a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568[26] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities.").

When Petitioner was arrested by the Michigan authorities on October 25, 2005, the State of Michigan gained primary jurisdiction over him. As explained above, the Michigan State authorities did not relinquish their primary jurisdiction over Petitioner when federal authorities borrowed him pursuant to the various writs of habeas corpus *ad prosequendum*. Instead, Michigan continued to retain its primary jurisdiction over Petitioner until he was released to begin his state parole period, when he was handed over to the United States Marshals Service on February 19, 2009.[27]

The undersigned recognizes that Petitioner raises the claim that his concurrent federal sentence should have begun on November 7, 2005. However, that date was merely the day that

---

[26] In computation of any federal sentence, two separate decisions must be made: when the federal sentence commences and to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. For offenses committed prior to November 1, 1987, each of these decisions is governed by repealed 18 U.S.C. § 3568, which specifies that the Attorney General is responsible for sentence computation decisions. For offenses committed on or after November 1, 1987, commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).

[27] Thus, Petitioner discharged his Michigan term of parole while in federal custody, finally completing it on February 10, 2011. See 10-3 at 36.

the federal charges for the sentence his is now serving were first entered against him in the Criminal Complaint sworn by the ATF Special Agent before United States Magistrate Judge in the Eastern District of Michigan.[28] Even so, Petitioner did not make his initial appearance in federal court until November 14, 2005.[29] Nonetheless, at the time the charges were first entered on November 7, 2005, at the time of his initial appearance, and at all times thereafter during his federal prosecution, even though Petitioner may have been in the physical custody of federal authorities, he was still in the primary custody of the State of Michigan.

In general, a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Nevertheless, in some cases, a federal sentence may begin prior to the date the Attorney General gains physical custody of the defendant. Title 18 U.S.C. Section 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment." This permits a *nunc pro tunc* designation to be made, whereby the Bureau of Prisons ("BOP") designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998) (a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence."). Nonetheless, a federal sentence cannot commence prior to the date of imposition, even if made concurrent to a state sentence already being served. See Torres-Hurtado v. Deboo, No. 2:10-cv-8, 2010 WL 2697602* 2, Seibert, M.J. (N.D. W.Va., May 03, 2010) (internal citation omitted), adopted in full by Torres-Hurtado v. Deboo, 2010 WL 2698276, Bailey, J. (N.D. W.Va. July 06, 2010). Because the BOP granted a *nunc pro tunc*

---

[28] See E.D. Michigan Criminal Case No. 5:05cr90038, Dkt.# 1.

[29] See Id., Order of Temporary Detention, Dkt.# 3

designation in this case, Petitioner's federal sentence commenced on February 20, 2008, the date it was imposed.

In its dispositive motion, Respondent provides a copy of a November 2, 2015 letter from the Michigan DOC that clarifies the history of Petitioner's State of Michigan criminal prosecution. Apparently, Petitioner

> was received in the MI Department of Corrections to begin service on his sentence on 11/26/01. He remained in prison until his first release on parole on 2/17/03. He continued to serve on his MI sentence while on parole, with exception to two time periods that he absconded from parole and was not given credit toward his MI prison sentence.
>
> The abscond periods were: 4/15/03 to 10/1/04 and 8/18/05 to 10/25/05.
>
> From 10/25/05 forward, he continued to serve on his MI prison sentence until his eventual discharge from parole on 2/10/11.

Dkt.# 10-3 at 36.

It is evident from the Michigan DOC's November 2, 2015 letter that Petitioner's State of Michigan sentence of parole was already in place on October 25, 2005, the date Petitioner was first arrested. Despite Petitioner's contention that he should start receiving concurrent credit on his federal sentence beginning on November 7, 2005, that is not possible, because two sentences cannot be *concurrent* until they both exist. Because the federal sentence did not "begin to exist" until it was imposed on February 20, 2008, there was nothing to run concurrently *with* the state sentence prior to that date. The fact that the U.S. Marshals "borrowed" Petitioner from the State of Michigan to bring him to be prosecuted in federal court is irrelevant for purposes of Petitioner's sentence computation, because as noted *supra,* a federal sentence does not begin to

run when a federal defendant is produced for prosecution by a federal writ of habeas corpus *ad prosequendum* from state custody.[30]

When Petitioner filed his grievances over the failure to run his federal sentence concurrent with the state sentence, the BOP reviewed his case for retroactive concurrent designation and determined it was appropriate. Therefore, Petitioner's concurrent sentence was designated to have begun on February 20, 2008 and it ran concurrent with his state sentence until the state sentence ended when Petitioner completed his state parole period on February 10, 2011. All of the time he spent in custody prior to February 20, 2008, whether spent in temporary federal physical custody during the prosecution of Petitioner's federal charges or in actual Michigan State custody, has already been credited against Petitioner's Michigan State sentence. Under 18 U.S.C. §3585(b), prior custody credit cannot be awarded if a prisoner has received credit towards another sentence. See U.S. v. Brown, 977 F.2d 574 (4th Cir. 1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**). (emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Dkt.# 10) be **GRANTED** and

---

[30] United States v. Cole, 416 F.3d 894 (8th Cir. 2005); United States v. Evans, 159 F.3d 908 (4th Cir. 1998); Thomas v. Whalen, 962 F.2d 358 (4th Cir. 1992); Thomas v. Brewer, 923 F.2d 1361 (9th Cir. 1991); Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990); Salley v. United States, 786 F.2d 546 (2nd Cir. 1986); Hernandez v. United States Attorney General, 689 F.2d 915 (10th Cir. 1982); Roche v. Sizer, 675 F.2d 507 (2nd Cir. 1982); and Chambers v. Holland, 920 F.Supp. at 622.

Petitioner's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Dkt.# 1) be **DENIED and DISMISSED.**

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendations**. 28 U.S.C. § 636(b)(l ); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATE: March 16, 2016

/s/   James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE